## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| O'RANE CORNISH, | ) | 3:23-CV-1612 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GUARDIAN ASSET MANAGEMENT, | ) | |
| ET AL., | ) | June 17, 2025 |
| *Defendants.* | ) | |

## RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND OTHER PENDING MOTIONS

Sarala V. Nagala, United States District Judge.

In this civil rights action brought pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff O'Rane Cornish alleges violations of his constitutional and federal rights by the New Britain Police Department, its Police Chief Matthew Marino, and New Britain Police Department Officers Grasso, Dominguez, Inthavongsa, and Calvin Wentworth. Defendants seek to dismiss all of Plaintiff's claims in the third amended complaint ("TAC") for failure to state a claim. Defs.' Mot. to Dismiss, ECF No. 154. For the reasons described below, the Court agrees, in part, with Defendants. Most of Plaintiff's claims in the TAC are dismissed, except that Plaintiff's claim for First Amendment retaliation against Defendants Wentworth and Marino, and his claim for forcible eviction in violation of the Due Process Clause of the Fourteenth Amendment against Defendants Grasso, Inthavongsa, and Dominguez, may proceed.

Additionally, the Court addresses and denies ten miscellaneous motions filed at ECF Nos. 225, 232, 236, 242, 245, 249, 252, 253, 265, and 269.[1]

---

[1] The Court notes that Plaintiff's interlocutory appeal, which challenged the Court's order staying discovery, has been dismissed and Plaintiff-Appellant's motion to recall the mandate has been denied. *See Cornish v. Guardian Asset Management*, No. 25-40 (2d Cir. June 10, 2025), ECF No. 28.1. Neither party argues, nor is the Court concerned, that this now-dismissed appeal has divested the Court of jurisdiction to rule on the motions at issue in this ruling.

## I.  MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

### A.  Factual Background

The allegations of a plaintiff's complaint are accepted as true for the purpose of assessing a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff used to reside at 54 Helen Drive, New Britain, CT ("The Property").  *See* TAC, ECF No. 52 at 2.  He was actively engaged in repairing the property when he resided there.  *Id.* at 3.

Plaintiff alleges that in late November of 2022, a representative of Guardian Asset Management[2] ("Guardian") broke into the Property, destroying the locks Plaintiff had recently installed.  *Id.*  Around this time, Plaintiff alleges that he "visited HUD," which this Court assumes to be the United States Department of Housing and Urban Development ("HUD"), to discuss a resolution regarding outstanding property taxes due.  *See id.*; *see also id.* at 29 (alleging that, at the time of the filing of the TAC, Plaintiff had incurred debts on the Property, including taxes owed to the town and HUD).

Plaintiff alleges that, on December 19, 2023, a representative from Guardian again broke the locks on the Property and entered.  *See id.* at 3–4.  When Plaintiff observed that a door lock was broken, he called the New Britain Police Department and reported that the Property had been unlawfully broken into.  *See id.*  Officers Grasso and Inthavongsa arrived at the scene.  *Id.* at 3.

In an effort to show the officers that any dispute between Plaintiff and Guardian would "be worked out in the courts," Plaintiff informed the officers of this lawsuit[3] and that Guardian was a

---

[2] Plaintiff alleges that Guardian is a corporation incorporated in Pennsylvania, but does not provide other factual allegations directly speaking to the role of that entity.  Guardian was previously a named Defendant in this suit, but the parties have stipulated to dismissal of it from this action.  *See* Stip., ECF No. 227.

[3] As discussed below, while the operative TAC was filed on May 22, 2024, Plaintiff initiated this lawsuit on December 11, 2023.

party to it. *See id.* at 4. The officers told Plaintiff that the suit was not proof that he had a right to reside at the Property. *See id.* When the officers asked Plaintiff for an electric bill to determine whether he had a right to occupy the home, Plaintiff responded that the electricity and internet were provided to the Property in his name, but the officers did not accept these representations as the proof they were seeking. *See id.* Plaintiff alleges that the officers forced him to load his belongings into his vehicle and forcibly evicted him from the property. *See id.* The officers' stated rationale for the alleged eviction was that the man from Guardian who entered the home had a business card to identify himself. *See id.*

That same day, Plaintiff filed a citizen's complain with the New Britain Police Department, and included two checks paid to the New Britain Tax Assessor's office for taxes on the Property and documentation concerning two suits filed by Plaintiff, one in federal court and one in state court, both requesting injunctions concerning the Property. *See id.* On December 21, 2023, after discussing the citizen's complaint with Captain Don Anderson in the New Britain Police Department, Plaintiff provided an electric bill for the Property and documentation concerning the federal suit. *See id.* at 4–5. At this time, Plaintiff was living out of his truck instead of at the Property. *See id.* at 5.

On December 21, 2023, Plaintiff contacted Anderson to inform him that Plaintiff was going back to the Property. *Id.* Once at the Property, Plaintiff found that the front door lock was broken; he entered the home, slept there, and began working on repairs the following morning. *Id.*

On December 23, 2023, Plaintiff found that two individuals were present on the Property and asked them to leave. *Id.* Plaintiff alleges that because neither of the individuals spoke English, he called the New Britain Police Department, but the department's dispatcher refused to send an officer because Plaintiff was complaining of a civil matter. *Id.* Another individual, Rene Morales,

arrived at the Property; Morales claimed to own the home, screamed at Plaintiff, banged a hammer against the front door lock, and broke the back door window. *Id.* Plaintiff again called the New Britain Police Department and, after initially refusing to send an officer, the police department dispatched Officer Dominguez, who concluded that Morales was the true owner of the home, having purchased it the previous day. *Id.* Plaintiff alleges that Dominguez may have "sided" with Morales over Plaintiff in determining their respective rights to be present at the Property because Morales speaks Spanish and Dominguez may speak Spanish. *Id.* at 6. Officer Dominguez subsequently forcibly evicted Plaintiff from the Property, despite that Morales did not, in fact, own the home. *Id.* at 5.

At some point in January of 2024, Plaintiff passed by the Property, which had a dumpster in the driveway. *Id.* at 6. Plaintiff could tell "the entire inside of the home had been ripped out." *Id.*

Sometime around March 18, 2024, Attorney Erina Ponzini, representing Guardian, called Plaintiff. *Id.* at 6. In this call, Attorney Ponzini acknowledged the existence of the present lawsuit, allegedly consented to Plaintiff's request for a preliminary injunction,[4] and granted Plaintiff permission to occupy the Property. *Id.* at 6. Ponzini relayed this information by phone and, after a request from Plaintiff, by follow-up email. *Id.* at 6–7.

---

[4] When Plaintiff initiated this suit, he sought a preliminary injunction against Guardian and HUD to prevent Guardian "from stealing or interfering with any of the Plaintiff's property, person, or belongings for 6 months." Mot. Prelim. Inj., ECF No. 2 at 3. On December 13, 2023, the Court denied Plaintiff's motion, finding that there was no showing of irreparable harm or likelihood of success on the merits of his claims. *See* Order, ECF No. 10. On April 25, 2024, after his conversation with Attorney Ponzini, Plaintiff filed a "request for service of consent to preliminary injunction," in which he sought to have Guardian's alleged consent to a preliminary injunction served upon the New Britain Police Department and Officers Grasso, Inthavongsa, and Dominguez. *See* ECF No. 35. The Court denied Plaintiff's request because it had denied Plaintiff's request for a preliminary injunction months earlier, so the request for preliminary injunctive relief was no longer live. *See* Order, ECF No. 37. Additionally, the Court noted that Guardian had not yet appeared in the suit. *Id.*

On April 19, 2024, Plaintiff called New Britain Police Department dispatch to inform the department that Plaintiff had been granted permission to occupy the Property. *Id.* at 7–8. On April 24, 2024, Plaintiff went to the New Britain Police Department station and attempted to give Officer Cruz the email from Ponzini, but Officer Cruz did not accept the document, indicating that he was unable to accept it and didn't know where it would be filed if he did. *See id.* at 8–10.

On an unspecified date, Plaintiff took the bus to the Property and took photos from the street, when Morales came outside and shook hands with Plaintiff. *Id.* at 12. Plaintiff informed Morales that the house was granted to him via Guardian's consent to the preliminary injunction, and Morales did not object to Plaintiff's taking photos. *Id.* After two minutes, Plaintiff left the property. *Id.*

After leaving the Property, Plaintiff received a call from a female officer of the New Britain Police Department. *Id.* The officer asked Plaintiff if "he could come back to New Britain." *Id.* The officer stated that multiple windows were left open at the Property, but later said that she had been mistaken and that there was no need for Plaintiff to come to New Britain again. *Id.* Plaintiff alleges that the female officer lied to Plaintiff in order to set him up. *Id.*

Plaintiff later received a call from Officer Wentworth, who said that someone broke into the Property and was pushing men around and taking photos. *Id.* at 13. Plaintiff alleges that this was an effort to frame and harm him. *Id.*

Around April 24, 2024, Plaintiff alleges that Wentworth filed a false report and ultimately issued an arrest warrant for Plaintiff that was based on false information and was a retaliatory attempt to get him to drop this civil suit against New Britain police officers. *See id.* at 13–14. Plaintiff asserts that the warrant was based on false and inaccurate information provided by an individual named Dayris Delicastillo, who, according to Plaintiff, "may or may not exist." *Id.* at

14.[5]  Plaintiff asserts that Defendant Chief Matthew Marino condoned or instructed the use of Wentworth's allegedly false report to be used in obtaining a warrant.  *Id.* at 14.

Plaintiff was charged with criminal trespass for entering the Property.  *See id.* at 15 (alleging that in New Britain Superior Court, State's Attorney Devant Joiner informed Plaintiff that there was "some issue" with 54 Helena Drive, and that Plaintiff was charged with criminal trespass).  A search of the publicly-available state criminal court docket information indicates that Connecticut has charged Plaintiff in Superior Court with criminal trespass in the first degree, with an offense date of April 24, 2024, and an arrest date of May 3, 2024.  *State v. Cornish*, H15N-CR24-0348753-S (Conn. Super. Ct.).[6]

On May 17, 2024, at Connecticut Superior Court, Plaintiff discussed the criminal trespass charges against him with State's Attorney Devant Joiner.  *See* ECF No. 52 at 14–17.  The TAC provides factual allegations about and brings claims against State's Attorney Joiner, as well as a Superior Court Judge, Carl E. Taylor who, allegedly, authorized the arrest warrant Plaintiff challenges.  *See e.g.*, *id* at 17.  As described below, the Court dismissed the claims as to Defendants Joiner and Taylor upon initial review of the TAC.

---

[5] Plaintiff has attached the information and arrest warrant application to a separate document he filed in this case.  The arrest warrant application, which was sworn by Officer Wentworth, stated that Ms. Delcastillo reported that she was the owner of the Property, she had contractors working on renovating the building, and that Plaintiff had "forced entry into the home and argued with the contractors while he took photographs."  ECF No. 44 at 10–11.  The information lists criminal trespass in the first degree as the charge.  *Id.* at 8.  Because the information and arrest warrant application were not incorporated by reference into or attached to the TAC, however, the Court will not consider them for purposes of deciding the motion to dismiss the TAC.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (concluding that on a motion to dismiss, the Court is limited to considering the allegations of the complaint, facts of which it can take judicial notice, documents incorporated by reference into the complaint, and documents considered "integral" because of the complaint's heavy reliance upon them).

[6] The Court may take judicial notice of relevant matters of public record.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

B.  Procedural Background

Plaintiff initiated this lawsuit on December 11, 2023, against Guardian and HUD, generally alleging that Defendants unlawfully interfered with Plaintiff's property on the false pretense of unpaid property taxes.  *See* Compl., ECF No. 1; Order, ECF No. 11.  The Court dismissed the complaint for failure to state a claim without prejudice.  ECF No. 11.  Plaintiff then filed an amended complaint, which was shortly followed by a second amended complaint.  *See* ECF Nos. 14, 16, 17.  The second amended complaint named Guardian and HUD, as well as police officers Grasso, Inthavongsa,[7] and Dominguez, alleging constitutional violations and tort claims stemming from Plaintiff's unlawful eviction from the Property.  *See* Second Am. Compl., ECF No. 17.  The Court, in an initial review, dismissed HUD as a Defendant, but allowed the amended complaint to proceed as to the remaining Defendants.  Order, ECF No. 19.  Plaintiff then filed the present operative TAC.  *See* ECF Nos. 52, 54, 62.

The named Defendants in the TAC were the Town of New Britain, the New Britain Police Department, Officers Grasso, Dominguez, Inthavongsa, Calvin Wentworth, Police Chief Matthew Marino, State's Attorney Devant Joiner, and Judge Carl E. Taylor.  ECF No. 52.  In granting in part and denying in part Plaintiff's motion for leave to file the TAC, the Court denied leave to amend to add claims against Judge Taylor, State's Attorney Joiner, and the Town of New Britain, and to add a claim for injunctive relief against Defendant Marino, as futile.  *See* Order, ECF No. 62.  Later, Plaintiff voluntarily dismissed his claims as to Guardian.  *See* Order, ECF No. 231.

The TAC asserts several claims, all brought pursuant to 42 U.S.C. § 1983.  Plaintiff does not assert these claims in one section of the TAC.  Instead, Plaintiff weaves in claims throughout the pleading.  In light of the Court's obligation to read *pro se* pleadings to raise the strongest

---

[7] At various points in this litigation, including the second amended complaint, Officer Inthavongsa's name has been misspelled as "Inthangsa."  *See, e.g.*, Order, ECF No. 112.

arguments that they suggest, *see Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015), the Court has construed Plaintiff as making the following claims: (1) a First Amendment retaliation claim against all Defendants; (2) a Fourth Amendment claim for false arrest against Defendants Marino and Wentworth and for failure to respond against all Defendants; (3) a discrimination claim under the Equal Protection Clause of the Fourteenth Amendment against all Defendants; (4) claims for failure to respond and forcible eviction under the Due Process Clause of the Fourteenth Amendment against all Defendants; (5) a claim for a *Brady* violation against Defendant Wentworth; and (6) claims under various criminal statutes, including 18 U.S.C. §§ 241 and 242, against all Defendants. Plaintiff seeks compensatory damages, punitive damages against Defendants Wentworth and Marino, and injunctive relief "prohibiting Defendants from further violating Plaintiff's constitutional rights." ECF No. 52 at 22.

Defendants Grasso, Dominguez, Wentworth, Inthavongsa, Marino, and the New Britain Police Department have moved to dismiss the TAC in its entirety for failure to state a claim. ECF No. 154.

### C. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a

"probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well–pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief*." Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes*, 790 F.3d at 387 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

### D. Discussion

The Court holds that most of Plaintiff's claims in the TAC are dismissed for failure to state a claim, except for Plaintiff's claims for First Amendment retaliation against Defendants

Wentworth and Marino and forcible eviction against Defendants Grasso, Inthavongsa, and Dominguez, pursuant to the Due Process Clause of the Fourteenth Amendment.

### 1. New Britain Police Department

As an initial matter, all of Plaintiff's claims against the New Britain Police Department must be dismissed as to that Defendant because it is not a proper party to this action.

Section 1983 provides in relevant part that "[e]very person who," under color of law, deprives a person of constitutional rights "shall be liable to the party injured." 42 U.S.C. § 1983. While a municipality is subject to suit pursuant to Section 1983, a municipal police department is not a "person" within the meaning of Section 1983. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 163–64 (D. Conn. 2005); *see also Raymond v. Manchester Police Dep't*, No. 3:24-CV-1098 (VAB), 2024 WL 5010489, at *3 (D. Conn. Dec. 6, 2024) (collecting cases). "Courts in Connecticut have held that the Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued. Rather, pursuant to Connecticut enabling legislation, it is the municipality itself which possesses the capacity to sue and be sued." *Raymond*, 2024 WL 5010489, at *3 (collecting cases) (cleaned up). Accordingly, Plaintiff may not sue the New Britain Police Department under Section 1983, and all of Plaintiff's claims against that Defendant are dismissed.

### 2. First Amendment Retaliation

Plaintiff alleges that the New Britain Police Department and certain of its members retaliated against him due to his "exercise of his right to seek legal redress against law enforcement officers." ECF No. 52 at 11, 20. To the extent Plaintiff brings this claim against the New Britain Police Department, it is dismissed for the reason set forth above. The Court therefore considers

whether the claim is adequately alleged against the individual New Britain police officers and Police Chief Marino.

As a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Barlett*, 587 U.S. 391, 398 (2019) (internal quotation marks omitted).  "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim."  *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  The elements of a First Amendment retaliation claim have been described in "several ways, depending on the factual context."  *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Generally, a plaintiff must allege (1) that he engaged in protected speech; (2) he suffered some concrete harm; and (3) there was a casual connection between the protected speech and the injury. *See generally Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  To satisfy the causation element, a plaintiff must allege but-for causation.  *Nieves*, 587 U.S at 399 (concluding that causation in a First Amendment retaliation claim "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive") (citing *Hartman*, 547 U.S. at 260); *accord Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order).

As to Defendants Grasso and Inthavongsa, Plaintiff appears to allege that they forcibly evicted him from the Property on December 19, 2023, in violation of his exercise of his right to seek legal redress against law enforcement officers.  The only exercise of this right that Plaintiff mentions in the TAC is the present action itself, which was initiated on December 11, 2023.  *See* ECF No. 52 at 14 ("The retaliatory conduct is a response on the defendants' behalf due to the

plaintiff suing members of the New Britain CT police department in US District Court of Connecticut Case 3:23-cv-01612.").  Until December 20, 2023, however, the only Defendants in this action were Guardian and HUD; no law enforcement officers had been sued.  *See* ECF No. 1.  Plaintiff filed an amended complaint on December 20, 2023, adding Defendants Grasso and Inthavongsa, based on the events of December 19, 2023, s*ee* ECF No. 14.  Based on this timing, it is clear these Defendants' actions on December 19, 2023, could not have been taken in retaliation for Plaintiff's exercise of his right to seek legal redress against law enforcement officers, when Plaintiff did not exercise that right until the day *after* his interaction with them.  Thus, Plaintiff's First Amendment retaliation claim against Grasso and Inthavongsa fails.

Defendant Dominguez is alleged to have forcibly evicted Plaintiff from the Property on December 23, 2023.  *See* ECF No. 52 at 5.  By that date, Plaintiff had filed an amended complaint naming Grasso and Inthavongsa, but neither of these Defendants had been served with that complaint.  Thus, it is not clear they, or Dominguez, would have even known of Plaintiff's suit.  Dominguez could not have retaliated against Plaintiff on account of filing this suit if he did not know about the suit at the time of the alleged retaliation.  Without facts plausibly alleging Dominguez's knowledge of the suit, Plaintiff has not pleaded a plausible claim of retaliation by forcible eviction against Defendant Dominguez.

Finally, as to Defendants Wentworth and Marino, Plaintiff appears to allege that Wentworth's seeking of, and Marino's authorization of, the arrest warrant for criminal trespass constitutes a retaliatory arrest.[8]  Plaintiff's theory of retaliation is that Wentworth and Marino

---

[8] Under *Tangreti v. Bachmann*, 983 F.3d 609, 617 n.4 (2d Cir. 2020), "a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."  The allegation that Marino "instructed" Wentworth to use a fictitious police report to obtain a warrant, *see* ECF No. 52 at 14, at this stage, plausibly shows Marino's personal involvement in the alleged false arrest and retaliation.

retaliated against Plaintiff in April of 2024 because Plaintiff had sued their colleagues, Defendants Grasso, Inthavongsa, and Dominguez, in this suit in December of 2023 and January of 2024, respectively. *See* ECF No. 52 at 14. As an initial matter, Plaintiff has adequately pleaded the first two elements of a retaliation claim: that he engaged in protected activity by filing this suit and that he suffered injury through the arrest.

As to causation, while Plaintiff's allegations are thin, Defendants Wentworth and Marino have advanced no arguments why they would *not* suffice to plead but-for causation. *See generally* ECF No. 154-1 at 9–10 (arguing only that the filing of a false police report does not create a right of action in damages under section 1983). Plaintiff filed suit against Defendants Grasso and Inthavongsa in December of 2023 and amended his complaint to add Defendant Dominguez in January of 2024; his arrest, allegedly authorized by Marino and carried out by Wentworth, followed a mere three months later. The Court must draw all reasonable inferences in Plaintiff's favor at this stage, and therefore infers that, as Chief of the Police Department, Marino likely had knowledge of this suit, brought by Plaintiff against officers in his department.[9] A maximum of four months passed between Plaintiff's filing of the suit and his arrest. When this temporal proximity is combined with Plaintiff's many allegations of the New Britain Police Department's refusal to acknowledge his claims of ownership of and legitimate presence at the Property, the Court finds that Plaintiff has adequately pleaded the causation element of his retaliation claim against Defendants Wentworth and Marino—albeit barely. Defendants Wentworth and Marino remain free to challenge this claim at summary judgment, including through argument that they had probable cause for Plaintiff's arrest. *See Nieves*, 587 U.S. at 406 (noting that "probable cause should generally defeat a retaliatory arrest claim").

---

[9] Given that Plaintiff alleges Marino authorized the warrant for Wentworth, the Court imputes that knowledge to Wentworth as well, at this stage of the proceedings.

Accordingly, Plaintiff's First Amendment retaliation claim fails against Defendants Grasso, Inthavongsa, and Dominguez, but may proceed against Defendants Wentworth and Marino.

### 3. Fourth Amendment

#### a.  False Arrest

Plaintiff alleges that Defendant Wentworth issued a false warrant without probable cause, depriving Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures.  ECF No. 52 at 19, 21; *see also id.* at 24, 30.  Plaintiff also alleges that Defendant Marino condoned or instructed Defendant Wentworth's actions.  *Id.* at 14, 21; *see also id.* at 30.  The Court construes these claims as claims for false arrest in violation of the Fourth Amendment and concludes that they must be dismissed.[10]

Section 1983 provides a "private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law."  *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citing 42 U.S.C. § 1983).  "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law."  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted).

To successfully plead a false arrest claim under Connecticut law—and, therefore, under Section 1983—plaintiff must show that "(1) the defendant intentionally arrested him or had him

---

[10] It is true, as Defendants argue, that there is no constitutional right to an accurate police report.  *Graham v. City of Albany*, No. CIV.1:08-CV-892 (RFT), 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009).  There is, however, a constitutional right to be free from the consequences of the filing of a false report if those consequences amount to a deprivation of life, liberty, or property.  *Id.*  The Court, therefore, finds it appropriate to analyze whether Plaintiff's allegations that Defendants Marino and Wentworth participated in the filing of a false report and subsequent false warrant ultimately amounted to a deprivation of life, liberty, or property.  The Court does so under the rubric of false arrest.

arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supposed by probable cause." *Edelman v. Page*, No. 3:00-cv-01166 (JAM), 2015 WL 1395893, at *11 (D. Conn. Mar. 25, 2015) (quoting *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 443 (D. Conn. 2013)); *see also Nodoushani v. Southern Conn. State Univ.*, 152 Conn. App. 84, 92–93 (2014). Additionally, favorable termination of the underlying criminal proceeding is required to establish a false arrest claim under both Connecticut law and Section 1983. *See Miles v. City of Hartford*, 719 F. Supp. 2d 207, 213–14 (D. Conn. 2010), *aff'd*, 445 F. App'x 379 (2d Cir. 2011) (citing *Roesch v. Otarola,* 980 F.2d 850, 853–54 (2d Cir.1992)) (holding that under Connecticut law, a false arrest plaintiff must show that the charges terminated favorably).

The first element is plausibly alleged as to only two Defendants, Wentworth and Marino. The other Defendants are not alleged to have participated in any way in Plaintiff's arrest. *See Reese v. Garcia*, 115 F. Supp. 2d 284, 294 (D. Conn. 2000) (concluding that an officer cannot be liable for false arrest when that officer did not prepare the warrant that led to plaintiff's arrest and otherwise had no participation in the arrest of plaintiff). The second and third elements are also plausibly alleged. While Plaintiff does not explicitly allege that he was aware of his arrest and that he did not consent to it, the Court believes so concluding is a reasonable inference to draw from Plaintiff's overall allegations.

The fourth element—lack of probable cause—is also adequately alleged. Plaintiff alleges that Officer Wentworth filed a false police report, verified by Defendant Marino, which led to the issuance of a warrant without probable cause. *See* ECF No. 52 at 13–14, 21. Plaintiff alleges that "the entire warrant was false, aside from what Rene Morales stated," and that the warrant was based on misleading and inaccurate information provided by a Dayris Delicastillo, which was

unsubstantiated and contradicted by video evidence and witness statements. *See id.* at 13–14. As to Morales's statement, Plaintiff appears to allege that the warrant application included a representation that Morales shook Plaintiff's hand as he left the property. *See id.* at 13. Plaintiff does not allege that Morales's statement included any representations concerning a trespass. *See id.* In this way, Plaintiff has not simply baldly asserted the fourth element of a false arrest claim in rote fashion, but has, rather, provided factual allegations to make plausible the assertion that his arrest was not based on probable cause.

Plaintiff has not, however, alleged that the criminal proceedings have terminated in his favor. In fact, Plaintiff himself alleges that the state proceeding is ongoing. *See id.* at 25.[11] Therefore, his false arrest claim must be dismissed.

### b. Failure to Respond

Plaintiff alleges that the New Britain Police Department failed to respond to reports of individuals attacking Plaintiff's property and refused to document incidents, which was a failure to protect against unreasonable interference with Plaintiff's property rights, in violation of the Fourth Amendment. *See id.* at 11, 20. For the reasons described above, the New Britain Police Department is not a proper party to this action. To the extent these allegations may be construed to apply to individual police officers, for the reasons described below, failure to respond or investigate is not a cognizable claim under the Due Process Clause.

The Court is also unaware of precedent indicating that it is a cognizable claim under the Fourth Amendment. The Fourth Amendment, in relevant part, protects "persons, houses, papers and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and it is

---

[11] A review of what appears to be Plaintiff's criminal case docket in Superior Court, H15N-CR24-0348753-S, as of June 17, 2025, indicates that the charges against Plaintiff are pending and have not yet terminated, in his favor or the State's.

altogether unclear how Plaintiff arguing that *inaction* on behalf of certain police officers to investigate or report other private actors causing damage to Plaintiff's alleged property can amount to a "search" or "seizure" on behalf of the police officers.  Accordingly, Plaintiff's claim for failure to respond pursuant to the Fourth Amendment must be dismissed.

### 4.  Equal Protection Clause

Plaintiff also alleges that the New Britain Police Department's delayed and inadequate response to his complaints were retaliatory and suggests discrimination on the basis of previous legal action Plaintiff has taken.  ECF No. 52 at 11, 20.  Plaintiff characterizes the police department's actions as a failure to provide "equal access to justice" and alleges that he "may have been treated differently from others in similar situations without a legitimate reason." *Id.*  The Court construes this as a class-of-one equal protection claim.  Again, while Plaintiff only explicitly brings this claim against the New Britain Police Department, liberally interpreting the third amended complaint to raise the strongest arguments it suggests, the Court will read Plaintiff as bringing this claim against the named officer Defendants.

A class-of-one equal protection claim arises where a plaintiff is "intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*)).  A class-of-one plaintiff must identify "at least one comparator with whom the plaintiff shares 'an extremely high degree of similarity' sufficient to 'provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 316–17 (D. Conn. 2015) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d

Cir. 2006)).  Specifically, a successful claim must show "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Hu v. City of New York*, 927 F.3d 81, 94 (2d Cir. 2019).

While Plaintiff makes the bald assertion that he "*may* have been treated differently from others in similar situations without a legitimate reason," ECF No. 52 at 11 (emphasis added), he provides no factual allegations to support this assertion.  Therefore, Plaintiff has failed to identify a single comparator and his claim must fail on this basis.

To the extent Plaintiff alleges that he has been discriminated based on his race and stature, *see* ECF No. 52 at 14, 21, he has failed to plausibly state an equal protection claim.  While Plaintiff asserts that he is Black and 6'8" and that, as a result, he has "consistently faced challenges involving encounters with police officers throughout his life," *id.* at 14, he in no way alleges that any Defendants took any action whatsoever against Plaintiff because of his race (or because of his height, which is not a constitutionally protected trait, in any event).  Plaintiff alleges that Wentworth's police report "serves as compelling evidence" that Plaintiff's ethnicity and stature "have been exploited to fabricate false narratives against him." *Id.*  But Plaintiff fails to identify a single aspect of the report that relates to his race.  In this way, Plaintiff's allegation that Wentworth exploited Plaintiff's race is a conclusory allegation that the Court need not accept as true.  *See Rolon*, 517 F.3d at 149.  Accordingly, the TAC does not state a claim for violation of the Equal Protection Clause on these grounds.

5. *Due Process Clause*

a. Failure to Respond

Plaintiff alleges that the failure to adequately respond to his requests to the New Britian Police Department could be construed as a denial of his procedural due process rights. *See* ECF No. 52 at 11. Accordingly, the Court analyzes whether Plaintiff states a claim under the Fourteenth Amendment Due Process Clause for failure to respond and concludes that he does not.

The Due Process Clause of the Fourteenth Amendment "forbids the State itself to deprive individuals of life, liberty, or property without due process of law, but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 195–96 (1989). Therefore, "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. As a result, Courts have concluded that "failure to pursue a particular investigative path does not give rise to an independent due process claim apart from claims of false arrest, malicious prosecution, or violation of right to a fair trial." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 633 n.55 (E.D.N.Y. 2017); *see also Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34 (2d Cir.2010) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations.") (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)). Therefore, Plaintiff's freestanding claim for failure to respond to his reports in any particular manner cannot proceed.

b.  Forcible Eviction

Plaintiff does, however, plausibly state a claim for forcible eviction in violation of the Due Process Clause.

"It is well settled that due process generally requires notice and a hearing prior to an eviction." *Martell v. City of St. Albans, Vermont*, 441 F. Supp. 3d 6, 14 (D. Vt. 2020); *see also WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009). "However, a pre-deprivation hearing is not required when an emergency situation exists, which renders meaningful pre-deprivation process impractical, and when adequate post-deprivation remedies are available." *Id.* (citing *WWBITV, Inc*, 589 F.3d at 50). "[W]here there is competent evidence allowing [an] official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999).

Plaintiff alleges that he resided at the Property and that Officers Grasso and Inthavongsa on one occasion and Officer Dominguez on another forcibly evicted him from the Property by excluding him from accessing it and forcing him to leave. *See* ECF No. 52 at 4–5. Plaintiff alleges that he is homeless as a result. *See, e.g.*, *id.* at 28. Plaintiff does not allege that he was afforded any hearing or other forum to be heard prior to these alleged exclusions from the Property, and it is a reasonable inference from the terms of the pleading that it is at least plausible one was not afforded.

Nor does Plaintiff allege any facts giving rise to the inference that there was an emergency situation in which a pre-hearing deprivation would not be required. To the extent there was any emergent situation, it would stem from how Rene Morales was alleged to have been screaming,

20

breaking windows, and banging on the door of the Property before the alleged December 23, 2023, eviction. *See id.* at 5. However strange these allegations are, they do not suggest that there was any exigent need to exclude *Plaintiff's* presence from the Property. Defendants, in their motion to dismiss, do not endeavor to respond to Plaintiff's claim that he was evicted without due process. And while that omission may well be sufficient grounds to allow this claim to proceed, for the reasons articulated above, the Court independently concludes that Plaintiff plausibly states a claim for forcible eviction.

Because Plaintiff only alleges involvement in the evictions by Defendants Grasso, Inthavongsa, and Dominguez, *see id.* at 4–5, the claim may proceed only as to those three Defendants. *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) ("To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").

### 6. *Claims Brought under Criminal Statutes*

Plaintiff's claims brought pursuant to statutes in the United States Criminal Code must be dismissed. A court may dismiss a claim if it is based on statutes that do not provide a private right of action. *Xu v. Neubauer*, 166 F. Supp. 3d 203, 206 (D. Conn. 2015). Plaintiff asserts that Defendants violated 18 U.S.C. §§ 35, 241, 242, 1513. ECF No. 52 at 1. But these criminal statutes do not create a private right of action for a civil suit. *See Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011); *Xu*, 166 F. Supp. 3d at 207; *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (noting that the Supreme Court has "refused to infer a private right of action from a bare criminal statute"); *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government,

not . . . by private complaints.").  Accordingly, Plaintiff's claims brought under these statutes must
be dismissed.

### 7. Brady Violation

Plaintiff's claim made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), must also be
dismissed.  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence
favorable to an accused upon request violates due process where the evidence is material either to
guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373
U.S. at 87.  There are three components of a *Brady* violation:  "[1] The evidence at issue must be
favorable to the accused, either because it is exculpatory or because it is impeaching; [2] that
evidence must have been suppressed by the State, either willfully or inadvertently; and [3]
prejudice must have ensued."  *United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) (alterations
in original).  Evidence is suppressed for *Brady* purposes "only if [the Government] fails to disclose
*Brady* . . . material in time for its effective use at trial or in a plea proceeding."  *United States v.
Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).

The Second Circuit has "emphatically" confirmed that Brady claims brought pursuant to
Section 1983 "necessarily imply the invalidity of the challenged conviction in the trial (or plea) in
which the *Brady* violation occurred."  *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir.
2014) (emphasis removed).  Thus, while a violation of *Brady* can theoretically serve as the basis
for a Section 1983 claim, *see id.* at 132 n.12, such a claim is barred by unless the plaintiff's
conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by
a state tribunal authorized to make such determination, or called into question by a federal court's
issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

Here, as noted above, Plaintiff's state criminal case for the trespassing charge remains pending, and so his Section 1983 *Brady* claim related to Defendant Wentworth's alleged "false story," ECF No. 52 at 13, is barred under *Heck*. With respect to the remaining Defendants, the Third Amended Complaint does not allege the suppression of evidence related to any plea or trial.[12] Therefore, Plaintiff's *Brady* claim fails.

        D.  <u>Conclusion</u>

For the reasons described above, Defendants' motion to dismiss Plaintiff's third amended complaint is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for First Amendment retaliatory arrest against Defendants Wentworth and Marino and his claim for forcible eviction against Defendants Grasso, Inthavongsa, and Dominguez, may proceed. All other claims are dismissed. Plaintiff's claims against the New Britain Police Department, claims for failure to investigate and false arrest, and claims brought under criminal statutes fail as a matter of law, not on the basis of inadequate pleading. Therefore, these claims are dismissed without leave to replead. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [*pro se* plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

In light of this ruling, the Court lifts its temporary stay of discovery, ECF No. 219. The parties shall file a joint Rule 26(f) report by July 8, 2025.

---

[12] While the TAC includes an allegation that State's Attorney Joiner failed to disclose exculpatory evidence, the "exculpatory evidence" that Plaintiff alleges was not disclosed is evidence that was in Plaintiff's own possession. *See* ECF No. 52 at 20. Moreover, State's Attorney Joiner is no longer a party to this action. *See* Order, ECF No. 62.

## II.    OTHER PENDING MOTIONS

There are ten additional pending motions that the Court now will address.  For the reasons discussed below, the motions at ECF Nos. 225, 232, 236, 242, 245, 249, 252, 253, 265, and 269 are denied.

### A.    Plaintiff's Motions to Reinstate Discovery (ECF Nos. 225, 265, and 269)

The Court granted Defendants' motion to stay discovery on January 2, 2025.  Order, ECF No. 219.  Since then, Plaintiff has filed multiple motions requesting that the Court re-open discovery.  *See* ECF Nos. 225, 265, 269.  Because this ruling denies in part Defendants' motion to dismiss and re-opens discovery, these motions are denied as moot.  Plaintiff may seek discovery in accordance with applicable Federal and Local Rules of Civil Procedure pertinent to the claims that this ruling has allowed to proceed.

### B.    Plaintiff's Motion for Default Judgment (ECF No. 232)

As of January 2025, this case had developed an extensive history of Plaintiff attempting to secure New Britain Police Department body camera footage of the events at issue in this case including, relevant here, body camera footage of Plaintiff's interactions with police officers at the Property from December 19, 2023.  *See*, *e.g.*, ECF Nos. 225, 232, 241.  In motions, including the above-described motion to re-open discovery at ECF No. 225, and in a motion for default judgment at ECF No. 232, Plaintiff had generally alleged "persistent misconduct during discovery, blatant violations of court orders, and failure [of Defendants] to adhere to their obligations under the Federal Rules of Civil Procedure," Mem., ECF No. 233 at 1, and had more specifically alleged Defendants' failure to provide all body camera footage from December 19, 2023, *see*, *e.g.*, ECF No. 225 at 5.  Relevant here, Plaintiff moved for default judgment pursuant to Fed. R. Civ. P. 37(b) as a result of these alleged discovery failures.  *See* ECF No. 232 at 3.

The Court held a hearing on January 28, 2025, to inquire as to the status of the disclosure of body camera footage, in order to inform its adjudication of Plaintiff's pending motions at ECF Nos. 225, 232. *See* Order, ECF No. 241. At this hearing, counsel for Defendants represented that it had disclosed all body camera footage, including all body camera footage from December 19, 2023, to Plaintiff back in October of 2024. *See id.* The Court ordered that Defendants contact the New Britain Police Department to confirm that it had provided all body camera footage from December 19, 2023, to counsel for Defendants and further required that Defendants file a status report detailing whether any additional body camera footage from that incident was revealed after the renewed inquiry and confirming that all available body camera footage from December 19, 2023, has been produced to Plaintiff. *Id.* After the hearing, Defendants filed this required status report and represented that "a couple files had been misplaced in [their] system," but that as of February 4, 2025, they had disclosed to Plaintiff all of the December 19, 2023, body camera footage. ECF No. 244. Thus, while Counsel for Defendants represented in the January 28, 2025, hearing that he had disclosed the December 19, 2023, body camera footage in full, that footage was not in fact disclosed until February 4, 2025.

Federal Rule of Civil Procedure 37 provides that, "[i]f a party . . . fails to obey an order to provide or permit discovery," the district court may impose sanctions, including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). A default judgment under this section, however, is a "severe" sanction, appropriate only in "extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the noncompliant party.'" *Guggenheim Capital, LLC, v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)). In deciding whether to impose sanctions under this rule, courts may consider "(1) the willfulness of the non-

compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017). Moreover, the Second Circuit has voiced a strong preference for courts resolving disputes on the merits. *S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011).

The Court cannot find that entering default against Defendants is appropriate under this standard. To the extent Plaintiff's motion at ECF No. 232 seeks default judgment for Defendants' failure to disclose the December 19, 2023, body camera footage, and subsequent misrepresentation about such disclosure, such a request is denied. While Defendants did misrepresent in January 2025, that all of the December 19, 2023, body camera footage had been disclosed, Plaintiff has not sufficiently shown that the misrepresentation was made willfully or in bad faith. Rather, Defendants' filing indicates that the misrepresentation was an inadvertent mistake. Moreover, when Defendants learned of the non-disclosure of the December 19, 2023, body camera footage, they promptly disclosed the footage to Plaintiff. *See* ECF No. 244. Additionally, the Court is mindful of the Second Circuit's preference for courts to resolve disputes on the merits and cannot find that Defendants' misrepresentation as sufficient grounds to enter judgment in Plaintiff's favor. To the extent Plaintiff's motion seeks default judgment for failure to comply with other discovery obligations more generally, such a request is denied as Plaintiff's motion fails to identify what other grounds would be a sufficient basis for any sanction, much less default judgment.

C. Defendants' Motion for Sanctions (ECF No. 236)

Defendants moved for sanctions against Plaintiff in January 2025, arguing that Plaintiff has repeatedly filed baseless motions, made misrepresentations to the Court, raised claims in piecemeal fashion, made serial submissions and failed to comply with applicable Rules and Court

orders, including Local Rule 37(a), even though he has been warned and admonished multiple times for such conduct by the Court.  *See* ECF No. 236 at 1.  Defendants appear to ask for sanctions pursuant to the Court's inherent power and Federal Rules of Civil Procedure 11 and 37.

Courts have inherent power to manage the proceedings before them, which extends to imposing sanctions against parties for certain conduct.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991).  More specifically, in order to impose sanctions pursuant to this inherent power, a district court must find that:  (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay. *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).  Additionally, pursuant to Fed. R. Civ. P. 11(c), the Court may impose sanctions on a party if "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated."  As to Rule 37 sanctions, the Court refers to the legal standard articulated above.  While a court may issue sanctions against a *pro se* party, the standard by which courts do so is more lenient and certain notice requirements apply.  *See*, *e.g.*, *Guggenheim Capital, LLC*, 722 F.3d at 452 ("Our Rule 37 precedents hold that a court abuses its discretion if it dismisses a case without first warning a *pro se* party of the consequences of failing to comply with the court's discovery orders."); *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005) ("[P]*ro se* parties are afforded greater leniency in considering whether or not to impose Rule 11 sanctions.").

Sanctions against Plaintiff are not warranted under any of these authorities.  As to sanctions under the Court's inherent power, Defendants have failed to show that Plaintiff's actions were without a colorable basis or brought in bad faith.  It is true that Plaintiff has previously failed to follow Court instructions.  *See*, *e.g.*, Order, ECF No. 153 ("The Court has repeatedly reminded Plaintiff that he is not allowed to raise claims in a piecemeal fashion . . . .  Yet, despite this Court's

reminders, Plaintiff again raises another claim in piecemeal fashion by raising a claim not included in his third amended complaint.").  In no uncertain terms, the Court notes that Plaintiff's failure to heed the Court's orders and instructions has needlessly expended judicial resources.  Nonetheless, Defendants have failed to show that Plaintiff's actions amount to sanctionable conduct.  As to sanctions under Rule 11, Defendants fail to identify a misrepresentation of the Court pursuant to Rule 11(b)[13] and also fail to identify how Plaintiff has been given notice and reasonable opportunity to respond to the Court's identification of a Rule 11(b) violation, particularly because the Court has not made any such finding.  As to sanctions under Rule 37, the Court cannot find that any of the identified actions of Plaintiff should be met with what Defendants themselves concede would be "a drastic penalty reserved in general for egregious conduct, such as willful and conscious disregard of a court order."  ECF No. 236 at 4 (quoting *Houghton v. Culver*, 467 F. App'x 63, 65 (2d Cir. 2012)).  In considering sanctions on all the grounds proposed, the Court is mindful of Plaintiff's *pro se* status.  While this status does not excuse Plaintiff from the obligation to follow the Court's orders, the Court finds that, at this juncture, it will not sanction Plaintiff in light of this status.

### D.  Plaintiff's Motion for Sanctions and Default Judgment (ECF No. 242)

On January 28, 2025, Plaintiff filed a document seeking three forms of relief.  First, Plaintiff requested default judgment for Defendants' "failure to provide accurate and complete discovery."  ECF No. 242 at 3.  This request appears to relate to Plaintiff's argument that counsel for Defendants represented to the Court at the January 28, 2025, hearing that Defendants had disclosed December 19, 2023, body camera footage from Officers Inthavongsa and Grasso when,

---

[13] The Court notes that Defendants argue that Plaintiff misrepresented that he did not receive December 19, 2023, camera footage in the October 22, 2024, disclosure.  ECF No. 236 at 2.  Defendants' later filing at ECF No. 244 demonstrates that Plaintiff did not in fact receive the December 19, 2023, footage until February 4, 2025.

in fact, they had disclosed footage from an Officer Chmura.  *Id.* at 1–3.  Second, Plaintiff requested a referral for an investigation for alleged ethical violations committed by counsel for Defendants regarding this alleged misrepresentation.  *Id.* at 3.  Finally, Plaintiff sought monetary sanctions "for Plaintiff's costs and time associated with uncovering Defendants' misrepresentations."  *Id.* at 3.

First, Plaintiff's request for default judgment and other sanctions are denied for the reasons described above.  The Court further notes that Defendants' opposition to this motion identifies that on October 22, 2024, Defendants inadvertently disclosed December *20*, 2023, body camera footage from Officer Chmura.  ECF No. 246 at 2.  As Defendants have now disclosed all body camera footage from December 19, 2023, and clarified the inadvertent disclosure of footage from Officer Chmura, the Court rejects Plaintiff's argument that counsel for Defendants' July 28, 2025, misrepresentation is sanctionable.

Second, Plaintiff's request for an investigation into counsel for Defendants is denied.  Plaintiff fails to identify an authority under which the Court may initiate such an investigation and the Court, again, reiterates that Plaintiff has failed to show that counsel for Defendants' failure to disclose the requested body camera footage was not inadvertent.

E.  <u>Plaintiff's Motion to Compel Discovery and for Sanctions (ECF No. 245)</u>

On February 6, 2025, Plaintiff filed a motion to compel and for sanctions, requesting five forms of relief.  ECF No. 245 at 6.  Each request is denied.

First, Plaintiff's request that the Court compel continued discovery to allow Plaintiff access to all body camera footage, including forensic examination of the files provided, is denied in light of Defendants' representation that the requested body camera footage was disclosed on February 4, 2025.  *See* ECF No. 244.  To the extent Plaintiff objects to this disclosure, now that discovery

is re-opened, he may meet and confer with counsel for Defendants in an attempt to resolve any such issues.

Second, Plaintiff's request for sanctions under Rule 37(b) for counsel's "willful noncompliance and perjury," ECF No. 245 at 6, is denied for the reasons articulated above.

Third, Plaintiff's request to refer Defendants' counsel "for disciplinary review" is denied for Plaintiff's failure to articulate a legal basis under which the Court would order such a review and for the reasons articulated above.

Fourth, Plaintiff's request to "[r]efer this matter to the U.S. Attorney's Office for potential prosecution under 18 U.S.C. §§ 1519 & 1621," is denied.  Federal district courts "adjudicate[] legal disputes and do[] not initiate criminal investigations or direct prosecutions." *Jones v. Waldron*, No. 3:15-cv-00613 (VAB), 2018 WL 3148369, at *5 (D. Conn. June 27, 2018).  The authority to prosecute crimes or investigate possible criminal charges at the federal level rests solely with prosecutors within the Department of Justice. *See id.*; *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379–80 (2d Cir. 1973) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary power of the attorneys of the United States in their control over criminal prosecutions.").  Accordingly, this Court is without authority to grant the relief requested.

Fifth and finally, Plaintiff's request that the Court reinstate discovery, ECF No. 245 at 6, is denied as moot in light of the Court's re-opening of discovery.

F.    Plaintiff's Motion to Submit Evidence Relating to Arrest Warrant (ECF No. 249)

On February 21, 2025, Plaintiff filed a motion requesting that the Court (1) accept evidence—a one-minute video of a conversation between him and a State's Attorney—that he argues confirms that there was no legal basis for his arrest; (2) acknowledge that Defendants

violated Plaintiff's Fourth and Fourteenth Amendment rights; and (3) recognize that his proposed evidence supports his claim of malicious prosecution[14] and constitutional violations. ECF No. 249 at 2. These requests are denied.

As a preliminary matter, Plaintiff fails to identify the procedural mechanism under which the Court would accept and review the evidence he purports to introduce at this stage of the proceeding. While the parties may submit evidence at summary judgment and at any trial, accepting evidence at this stage—the pleadings stage—would be inappropriate. Additionally, Plaintiff's request that the Court acknowledge that Defendants violated any of his federal rights is denied as premature. The Court has just adjudicated Defendants' motion to dismiss and is not ruling on the ultimate issue of whether judgment may be entered in favor of Plaintiff on any of his claims. To the extent Plaintiff asks the Court to recognize that his proposed evidence supports any of his claims, the Court is unable to issue an advisory opinion. *See F. X. Maltz, Ltd. v. Morgenthau*, 556 F.2d 123, 126 (2d Cir. 1977).

G. Plaintiff's Motion to Lift Stay of Discovery and for Appointment of Counsel, (ECF No. 252)

Both of Plaintiff's requests in his March 12, 2025, motion at ECF No. 252 are denied. First, Plaintiff's request to lift the stay of discovery is denied as moot, in light of the Court's re-opening of discovery. Second, Plaintiff's motion for the appointment of counsel is denied. As this Court has already noted, civil litigants do not have a constitutional right to the appointment of counsel and a court's decision to appoint *pro bono* counsel is discretionary. *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68–69 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." (citation omitted)); *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) ("Broad discretion lies with the district

---

[14] While Plaintiff refers to malicious prosecution in this motion, the TAC brings no such claim.

judge in deciding whether to appoint counsel." (citation omitted)); 28 U.S.C. § 1915(e)(1) (permitting, but not requiring, district court to appoint pro bono counsel for indigent litigants). The Second Circuit has cautioned the district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173–74 (2d Cir. 1989). Before an appointment of *pro bono* counsel for an indigent litigant is considered, the indigent person must demonstrate that he tried, but was unable, to secure counsel. *Hodge*, 802 F.2d at 61. In addition, the district court must "determine whether the indigent's position seems likely to be of substance." *Id.*; *see also Cooper*, 877 F.2d at 171.

Plaintiff's motion fails to represent that Plaintiff attempted to secure *pro bono* counsel. Additionally, although this ruling has permitted some of Plaintiff's claims to proceed, at this juncture, the Court, the Court cannot conclude that Plaintiff's claims have sufficient merit to warrant the appointment. Moreover, while Plaintiff asserts that he should be appointed counsel "[g]iven the complexity of the legal and factual issues involved," ECF No. 252 at 2, he fails to articulate what specific aspects of this case are sufficiently complex to merit the appointment of counsel.

The Court again reminds Plaintiff that he may contact the Federal Pro Se Legal Assistance Program, which is now reachable through the following website:

https://law.qu.edu/academics/clinics-and-externships/federal-pro-se-legal-assistance-program/.

### H.  Plaintiff's Motions for Recognition of Disability Status (ECF Nos. 253, 269)

Plaintiff has filed a motion in which he requests that the Court: (1) "[r]ecognize and formally acknowledge Plaintiff's clinical disability as of December 2023 in all proceedings," (2) "[a]cknowledge that any attacks, harassment, or misconduct by New Britain officials must be viewed as violations against a disabled individual under federal law," and (3) "[c]onsider this

disability status in all rulings related to Plaintiff's claims, including but not limited to requests for injunctive relief, evidentiary considerations, and future proceedings." ECF No. 253 at 4. Plaintiff argues that he has "been deemed clinically disabled as of December 2023," *id.* at 2, but he does not specify what his disability is. Plaintiff has also filed a separate motion in which he alleges that Defendants have interfered with his mental health care at a medical facility. ECF No. 269 at 2. While he alleges that his treatment at the facility was unexpectedly terminated, he provides no facts to suggest that Defendants had anything to do with this turn of events. *Id.* Rather, he states that the medical facility's decision "closely coincided with Defendants' objection to Plaintiff's filing." *Id.* Plaintiff asks, in relevant part,[15] for the Court to hold a hearing regarding this alleged retaliation and for the Court to take judicial notice of his documented legal disability. *Id.* at 3.

Importantly, Plaintiff's TAC does not allege that Plaintiff is disabled, and Plaintiff does not bring any claims related to any disability. The Court is, therefore, unable to grant relief with respect to these requests, even were they factually supported. *Cf. Ramos v. Univ. of Connecticut Health Ctr.*, No. 3:17-CV-326 (VAB), 2018 WL 2465356, at *7 (D. Conn. June 1, 2018) ("It would be inappropriate for the Court to grant a request for injunctive relief that is unrelated to the claims and Defendants in the Amended Complaint."). The Court also rejects Plaintiff's request to hold a hearing regarding any alleged retaliation articulated in ECF No. 269, as he has failed to advance any legal basis upon which the Court would address his allegations and has failed to provide a non-speculative connection between any actions of Defendants and the termination of his mental health care.

---

[15] To the extent Plaintiff's motion at ECF No. 269 requests a stay of discovery, the Court has addressed that request above.

I.    Conclusion

For the reasons discussed above, the motions at ECF Nos. 225, 232, 236, 242, 245, 249, 252, 253, 265, and 269 are denied.

**SO ORDERED** at Hartford, Connecticut, this 17th day of June, 2025.

/s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE